# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### APPEAL NO. 21-1077

### UNITED STATES,
Appellee,

### v.

### ALEXIS D. NEGRON-CRUZ,
Defendant-Appellant.

---

## UNITED STATES' OPPOSTION TO APPELLANT'S MOTION FOR STAY OF THE DISTRICT COURT'S ORDER, OR ALTERNATIVELY, TO EXPEDITE BRIEFING AND CONSIDERATION

---

**TO THE HONORABLE COURT:**

Appellee, the United States of America, opposes the motion of defendant-appellant Alexis D. Negrón-Cruz for stay pending appeal of the district court's order for commitment for psychiatric evaluation and treatment made under 18 U.S.C. §§ 4241(a) and (b), 4242(a), and 4247 pending appeal, or alternatively, for expedited briefing of the interlocutory appeal involving the district court's commitment order. This Court lacks appellate jurisdiction because the district court's commitment order is not an appealable collateral order under the collateral order doctrine, and thus,

the appeal should be dismissed. Even if the Court has jurisdiction, Negrón's request for stay should be denied because his claims contesting the district court's commitment order are unavailing. For the reasons stated below, Negrón's motion should be denied.

## RELEVANT FACTS

In June 2011, a criminal complaint was filed against Negrón. (DE 3). A two-count Indictment followed and Negrón was charged with attempted enticement of a minor, in violation of 18 U.S.C.§ 2422(b), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).[1] (DE 10).

At a pretrial conference, Negrón's counsel informed the district court that he was "concern[ed] regarding [Negrón's] competency" and intended to "retain a clinical psychologist to evaluate [him]." (DE 28). In the meantime, the Grand Jury returned a five-count Superseding Indictment charging Negrón with: (1) two counts of  attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b) (Counts One and Two); (2) two counts of attempted transfer of obscene material to a minor, in violation of 18 U.S.C. §

---

1.     Citations to the record will be as follows: DE (docket entry or entries for Criminal Case No. 11-229 (FAB); AM (Appellant's Motion); AB (Appellant's Brief); AA (Appellant's Appendix).

1470 (Counts Three and Four); and (3) possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Five). At a subsequent pretrial conference, Negrón's counsel informed the district court that the "evaluation report was received and [Negrón] was found competent." (DE 38).

After two counsels withdrew their representations of Negrón and multiple requests for a change of plea hearing (DE 40, 41, 42, 49, 51, 61, 63, 66, 76, 77, 79, 80, 81, 83, 84, 85, 86, 87), Negrón entered a guilty plea to the § 2252(a)(4)(B) possession of child pornography offense, (DE 107, 112, 114).[2]

The United States Probation Office ("USPO") followed with an amended Presentence Investigation Report ("PSR"). (DE 126). In it, the probation officer noted Negrón had informed her that he "suffer[ed] from generalized fears and panic attacks since the age of 5" and that "at age 18, he was formally diagnosed" with these conditions. (DE 126 at 10). And the probation officer recorded that Negrón "was treated by a psychiatrist once

---

2. After Negrón pleaded guilty, he filed motions for appointment of new counsel arguing, in part, that his counsel was ineffective in failing to contest the district court's jurisdiction because the court was merely "an administrative body." (DE 120; DE 124 at 3, 5). He further alleged that there was an improper relationship between the court, the prosecutor, and his counsel and that it was these three against him. (*Id.* at 2). The district court denied these motions. (DE 121, 125).

and prescribed Xanax," but "[a]fter the second Xanax, he stopped the medication as he did not like the side effects." (*Id*.). Negrón also informed the probation officer that when he turned 24, "he was baptized and all his fears and panic attacks disappeared" but he "once again experienced panic attacks" for a while "after a break up in a relationship." (*Id*. at 11).

In December 2013, Negrón was sentenced to 120 months' imprisonment to be followed by a 25-year supervised release term. (DE 142, 143; AA2-3). The district court imposed the standard supervised release condition that Negrón "shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer" (Standard Condition No. 3). (AA3). In addition, special supervised release conditions were imposed, including:

> 7. He shall undergo a sex-offense-specific evaluation or participate in a sex offender treatment or mental health treatment program, as arranged by the Probation Officer. He shall abide by all the rules, requirements, and conditions of any mental or sex offender treatment program including testing . . . He shall waive his right to confidentiality in any record for mental health or sex offender assessment and treatment and shall sign any necessary release [] required to obtain the records, to allow the probation officer to review his course of treatment and progress with the treatment provider. . . . . He shall be required to submit to an initial polygraph testing and subsequent maintenance testing at intervals at the

discretion of the probation officer, to assist in treatment planning and case monitoring and as a means to ensure that he is in compliance with the requirements of his supervision or treatment program.

12.   He shall not view, use, possess, purchase, distribute or subscribe to any form of pornography, erotica or sexually stimulating visual or auditory material, electronic media, computer program or service, including but not limited to videos, movies, pictures, magazines, literature, books, or other products depicting images of nude adults or minors in a sexually explicit manner. Defendant shall not enter any [] pornography shops, strip or topless clubs, massage parlors, or any business were (sic) the primary function is to provide pornography or sexual services. Defendant shall refrain from accessing any material that relates to the activity in which he was engaged in committing this offense, namely child pornography.

16.   He shall submit himself and his property, house, residence, vehicle, office, papers, computer, other electronic communication or data storage devices or media, to a search, conducted by the United States Probation Officer, at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband, or of evidence of a violation of a condition of supervised release. The probation officer shall seize any electronic device which will be subject to further forensic investigation and analysis. Failure to submit to a search and seizure may be grounds for revocation of supervised release. Defendant shall warn any other resident or occupant that the premise my be subject to search pursuant to this condition.

18.   He shall consent to the installation of systems that will enable the probation officer or his or her designee to monitor and filter the computer use on a regular or

random basis, on any computer owned or controlled by him. . . . .

19. He shall not possess or use a computer, cellular telephone, or any other devise with internet accessing capability, at any time or place without prior approval from the probation officer. The prohibition includes access through an internet service provider, bulletin board service, email system, or any public or private computer network system. The defendant shall permit routine inspections of his computer system or any other computer system maintained in his possession to include the hard drive and any media storage materials, in order to confirm adherence to this condition. The inspection shall be no more intrusive than is necessary to ensure compliance with third party risk, who may be impacted by this condition.

(AA4-5).

Negrón appealed, contesting "several conditions of the supervised release imposed on him as part of his sentence." (DE 150). But this Court dismissed the appeal because the plea agreement's waiver of appeal provision applied, and Negrón had failed to even acknowledge this waiver-of-appeal clause in his opening brief, and thus, he "waived any right to challenge its enforceability." (*Id*. at 1-2). Even so, this Court noted that Negrón was not prevented from later seeking modification of the supervised conditions under 18 U.S.C. § 3583(e)(2). (*Id*. at 2).

Approximately a month prior to Negrón's release from prison, the

USPO filed an informative motion which the district court noted. (DE 182, 183). The probation officer informed about a visit with Negrón at the institution "to develop the initial rapport, review the conditions of release, and to clarify roles." (*Id*. at 1). But during the interview process, Negrón "conducted himself with resistance and hostility towards collaborating with the prerelease process and declined to sign his Judgment because he d[id] not agree to follow the supervised release conditions." (*Id*.).

Prior to and after the meeting, Negrón filed a series of *pro se* motions in the Spanish language, which some were either denied while others were noted by the district court. (DE 167-77, 184, 185, 188-91, 196). But the court ordered the probation officer to respond to one informative motion.[3] (DE 186). In compliance, the probation officer notified that after his visit with Negrón, he requested the assistance of the Federal Public Defender's Office to help Negrón understand his supervised release term responsibilities, to provide him guidance, and to clarify any of his confusions in order to

---

3. Negrón filed *pro se* motions contesting conditions at the Bureau of Prisons ("BOP"), which the district court ordered it to respond to three motions. (DE 169, 170, 192). After the BOP responded (DE 171, 177, 193), the court entered an Order that it would not entertain any more similar motions unless Negrón certified that he had exhausted his administrative remedies with the BOP. (DE 194).

prevent his noncompliance with the supervised release conditions. (DE 187 at 1-2). The probation officer noted that this was the first time that a potential supervisee had declined to follow and sign the conditions of supervised release at the pre-release stage. (*Id*. at 1). And after this visit, Negrón submitted the motion, in which he "launched disrespectful and threatening remarks against the professional conduct of various servants who had been involved in his legal predicament, including the undersigned and the Court." (*Id*. at 2). Negrón also contended that he was innocent and questioned the imposed supervised release conditions. (*Id*.). The probation officer advised that Negrón needed to understand that the supervised release conditions were not optional and that he needed to comply with them or his noncompliance could result in violations of the conditions of supervised release. (*Id*.).

On December 17, 2019, Negrón was released from prison and his supervised release term commenced. (AA8). Approximately four months later, the USPO notified the district court that Negrón violated two conditions of supervised release and requested that the district court issue a summons for Negrón to appear "to show cause as to why his supervised release term should not be revoked." (AA8-11).

The probation officer advised that Negrón had violated Special Condition No. 7. (*Id*.). The probation officer informed that after many interventions, Negrón finally signed the program referral form to undergo the evaluation process but he still refused to sign a release of confidential information form, which was necessary for the treatment referral. (AA9-10).

Negrón also violated Special Condition No. 19, the probation officer noted. (AA10). The probation officer informed that during a phone conversation, Negrón admitted that he maintained active email accounts and had access to internet. (*Id*.). He was then reminded by the probation officer of Special Conditions 18 and 19 and the lack of prior approval by the probation officer and he was instructed to stop accessing the internet until either receipt of the probation officer's approval or disapproval. (AA10-11). Upon further questioning by the probation officer, Negrón also admitted to continually using the internet and his email accounts, and thus, he failed to comply with Special Condition No. 19. (AA11).

In the notification, the probation officer further informed that four days later, she met with Negrón and they reviewed the supervised release conditions. (AA11). But Negrón advised that he disagreed with Special Condition Nos. 7, 12, 17, and 19, and the last line in Special Condition No. 8

("He shall remain at his approved residence every night and will not sleep or stay overnight anywhere else without prior approval from the U.S. Probation Officer."). (AA 4, 11). He informed the probation officer that he would not comply with these conditions. (AA11).

A June 29, 2020 show cause hearing was then held before a magistrate judge. (DE 212). Negrón agreed to comply with all of the supervised release conditions, including the conditions set forth in the probation officer's motion. (*Id*.). The magistrate decided to hold in abeyance the probation officer's motion and ordered the filing of a motion from the probation officer informing about the case status and Negrón's compliance with his supervised release condition no later than July 30, 2020. (*Id*.). If Negrón complied with the conditions, the magistrate determined that the probation office could "then move to dismiss the motion or request any other relief that may be deemed warranted." (*Id*.).

On July 17, 2020, Negrón submitted a *pro se* motion in the Spanish language to the district court requesting an Order. (DE 213). The district court ordered the probation officer to respond. (DE 214). Three days later, the probation officer complied. (AA26). In the response, the probation officer noted that the supervision of Negrón was "very challenging" due to: his

defiance of the imposed supervised release conditions;[4] his prior issue of homelessness; his use of "sexual predator" on employment applications and failure to explore employment opportunities resulting in his lack of employment; and his continuing to access the internet and telephone without the installation of a software program for monitoring as described in Special Condition No. 18. (AA26-29). And the probation officer informed that after Negrón's release, it took 7 months to start his evaluation process for participation in the sex offender program because he resisted and was unwilling to comply with Special Condition No. 19. (AA29).

The probation officer also advised the district court that her community risk and other concerns were now justified. (*Id*.). Based on a completed psychosexual evaluation, a psychologist found that Negrón had "mental health issues and a [h]igh risk for re-offending." (*Id*.). The probation officer had also contacted the transitional home where Negrón currently resided, and the program case manager informed that Negrón announced

---

4. The probation noted that she tried to convince Negrón of the importance to comply with the supervised release conditions. (AA 26). And although Negrón agreed to comply with the conditions at the show cause hearing, he waited until two hours before the hearing to inform this decision showing his lack of willingness to really comply with them. (AA26-27).

that he "would no longer comply with the action plan established by the Probation Office" and even failed to report back to the home. (AA29-30).

On July 29, 2020, the USPO submitted a motion in compliance with the magistrate's June 29, 2020 order and a notification of new supervised release condition violations. (AA32). The probation officer informed that Negrón had attended the appointment for psychosexual evaluation with a psychologist. (*Id*.). But during the interview process, he had "displayed a somewhat aggressive and defensive attitude." (AA32). The probation officer also advised about the psychologist's assessment that Negrón "presented a tendency to avoid self-disclosure" and "suffer[ed] from mental health issues." (*Id*.). The psychologist found that: (1) Negrón was "currently a High-risk case" that required "close monitoring and supervision"; and (2) Negrón's "current mental status represent[ed] a danger to the community." (AA33). Finally, the psychologist recommended that Negrón should undergo "a psychiatric evaluation for treatment purposes including pharmacological treatment if necessary" and "strongly" recommended consideration of "[a]n inpatient psychiatric and psychological treatment." (*Id*.). This was "[d]ue to the danger [Negrón] represent[ed] to the community." (*Id*.).

The probation officer further informed that Negrón also failed to comply with Standard Condition No. 3 and Special Condition No. 19. The probation officer advised that the USPO had arranged an action plan for Negrón to provide him structure and to protect him and the community. (AA34). But Negrón would leave the program's premises a 6:00 am and not return until 6:00 pm without providing specific information as to his whereabouts when he was questioned. (*Id*.). And the program case manager informed the probation officer that Negrón failed to comply with the action plan, and he had advised her that he would no longer comply with the supervised release conditions. (AA34-35). Moreover, the transitional program coordinator contacted and advised the probation officer that in a recent routine search, Negrón possessed "three cellular phones, two of them with internet access and a laptop also with internet access." (AA35). Negrón also admitted that he had acquired the WIFI signal from the program without its authorization. (*Id*.).

Based on this information, the probation officer requested a warrant for Negrón's arrest in order that he be brought before the court to show cause as to why his supervised release term should not be revoked. (AA35).

On that same day, the magistrate judge granted the probation officer's

motion and issued an arrest warrant for Negrón. (DE 219, 220). At an initial appearance for the revocation of the supervised release term, the magistrate advised Negrón of the supervised release violations. (DE 222). Negrón was also ordered temporarily detained under 18 U.S.C. § 3142(d). (DE 222, 223).

The USPO then submitted a supplemental motion, notifying additional supervised release condition violations. (AA7). The probation officer informed that Negrón had violated Standard Condition No. 7 because although he appeared and did not refuse to take the polygraph test, he refused to answer any questions or speak about his past and sexual history. (AA37-38). The polygraphist could not therefore conduct the required polygraph test. (AA38).

The probation officer also informed that Negrón violated Special Condition Nos. 16 and 19 because, as described in the previous notification, he improperly possessed and used three cellular phones and a laptop and improperly used WIFI without obtaining permission. (AA39-40). And the forensic analysis of two of the three phones revealed Negron's use of active social networks, WhatsApp, email accounts, and other information. (AA40-41).

At a preliminary hearing, the government presented the testimony of

the probation officer. (DE 229). Based on this testimony, the magistrate judge found probable cause that Negrón had violated the supervised release conditions contained in the probation officer's three motions. (*Id*.). The government moved for detention. (*Id*.). The magistrate granted the request due to its finding of probable cause that Negrón had violated his supervised release condition. (AA43). And the magistrate found Negrón to be "a risk of flight" because he "ha[d] no established residence, a long record of probable cause for violations of his supervised release conditions, and ha[d] not met his burden of showing he would comply with other release conditions." (*Id*.). Negrón was "detained pending the final revocation hearing." (*Id*.). The case was also referred to the district court for a final revocation hearing. (DE 229).

Negrón followed with a *pro se* motion in the Spanish language requesting appointment of new counsel, disqualification of the judge, release from custody, return of property, and miscellaneous relief. (DE 231; AA44-48). The district court ordered Negrón's counsel and the USPO to respond, and both complied. (DE 232; AA49-55). The court then denied Negrón's requests for appointment of new counsel, change of probation officer, disqualification of the judge, and continuance of his life without restrictions.

(DE 235; AA56-57). The court's orders were mailed to Negrón, but the mail was returned reflecting his refusal to accept it. (DE 242).

On December 8, 2020, the government filed a motion requesting an order for the psychiatric evaluation of Negrón. (DE 251). The government expressed concerns as to whether Negrón understood the current proceedings and whether he was challenging the supervised release conditions "because he either, consciously did not want to comply with the conditions or . . . ha[d] [a] mental defect that [wa]s preventing him from complying with the conditions." (DE 251 at 1-2). Relying on the psychologist's psychosexual assessment report, the government moved the district court to issue an Order directing "[t]he United States Marshal to make the necessary arrangement to transfer [Negrón] to Butner Federal Correctional Institution, North Carolina, in order to conduct a psychiatric evaluation to determine [his] mental competency to comply with the conditions imposed for his supervised release term, assist his attorney in the preparation of his defense <u>and</u> for treatment as recommended by the psychiatrists at Butner." (*Id.* at 3) (emphasis in original). And the government further requested that the psychiatrist's report be in writing and that copies of it be furnished to the parties. (*Id.*). It also attached a draft order

16

along with a copy of the psychosexual assessment report. (DE 251 at 5-6; DE 251-1).

Negrón's counsel objected to the government's motion and moved to strike the attached psychosexual assessment report. (AA58). But the district court denied Negrón's motion. (DE 257).

At a December 11, 2020 final revocation hearing, the parties presented their arguments. (DE 258). Negrón's counsel advised that Negrón had initially advised him that he would not challenge the violation allegations. (AA 73-74). But on that morning, Negrón's views changed, and he informed counsel that he would represent himself and did not want counsel's assistance and hung up the phone. (AA74-75). In response, Negrón claimed that: he did not have counsel's phone number; counsel would only show up when the hearing date approached; and he was never shown the psychologist's report. (AA76). Counsel agreed that he never showed the report to Negrón, but he had informed him of its content and believed this report was not relevant because the current case involved prior supervised release violations. (*Id*.). Counsel also advised that Negrón wanted to contest the supervised release conditions on constitutional grounds, which counsel understood was inappropriate for the final revocation hearing. (AA77).

The court then turned to the government's request for psychiatric evaluation of Negrón. (AA78). The government informed that its recommendation was based on two factors. (AA78). It relied on the psychologist's report recommending psychiatric evaluation. (*Id*.). And the government relied on the factors leading up to the current revocation proceeding, including Negrón's intentional noncompliance with or rejection of the supervised release conditions and *pro se* motions raising frivolous accusations. (AA 78-79). Because there was a 25-year supervised release term, the government stressed the possibility of continued violations if something was not done. (AA78). It advised that prison might not be the best way to address Negrón's mental health issues and the better practice would be to consider whether Negrón needed psychiatric help. (*Id*.).

Next, the court requested the probation officer's input. (AA80). In response, the probation officer advised that Negrón's supervision had not been too successful. (*Id*.). The probation officer informed that as a supervised release condition for Negrón, a psychosexual evaluation was to be performed as part of his sex offender treatment. (*Id*.). But during this treatment, the psychologist strongly recommended that Negrón participate in an inpatient psychiatric evaluation because when he tried outpatient

treatment, he failed to comply with it. (*Id.*). And every time Negrón was encouraged to comply with the condition, he refused. (*Id.*). But once he faced a court proceeding, he was then willing to comply with conditions. (AA80-81).

The probation officer also agreed with the psychologist's evaluation that Negrón showed "some symptoms of mental disease" which have not been treated, and to reaffirm this evaluation, Negrón needed to go "through a psychiatric evaluation in the inpatient setting." (AA81). In support, the probation officer noted Negrón's written motions and responses which reflect "paranoid disorder, characterized by his constant suspicion of others and exaggerated distrust." (*Id.*). This was further reflected again with Negrón's desire to "withdraw his defense attorney's assistance." (*Id.*). The probation officer concluded by again requesting "a psychiatric evaluation where he w[ould] have a chance to be evaluated in-patiently and then treated, if necessary, to gain the stabilization that would allow him to comply with the supervised conditions as expected." (*Id.*).

Negrón's counsel countered advising that he made arrangements for transitional housing for Negrón, and that if Negrón had to undergo psychiatric treatment, he wanted it to be outpatient in Puerto Rico and not a

transfer to Butner. (AA82-83). Counsel also requested the lower end of the guidelines which would be time served. (AA83).

After hearing Negrón's arguments and allocution, the court determined that it would not revoke Negrón's supervised release term. (AA90). Instead, it "refer[red] him to the institution of Butner for an inpatient psychiatric evaluation and treatment, if necessary, in order to determine if his failure to comply with his conditions of supervised release [wa]s a consequence of his mental health diagnosis established by [the psychologist] in her report." (*Id*.). Negrón responded: "Please don't do that to me." (*Id*.).

On that same day, the district court issued an Order "that pursuant to the provisions of Sections 4241(a) and (b), 4242(a) and 4247 of Title 18, United States Code, that a psychiatric examination, evaluation and treatment of [Negrón] be performed." (DE 261). The court also ordered that United States Marshal's Office "make the necessary arrangements to transfer [Negrón] to Butner Federal Correctional Facility, North Carolina, in order to determine defendant's mental competency to comply with the supervised release term conditions, that is, whether he is able to understand the proceedings against him, to consult with his counsel and in his defense and in order to treat defendant as deemed necessary by the psychiatrists at the Butner

Correctional Institution." (*Id*.).

Negrón followed this by filing a series of *pro se* motions in the Spanish language with the district court and this Court, including a notice of appeal. (DE 257, 262, 268, 270, 274, 275). Although Negrón's notice of appeal was filed 35 days after the district court's order for inpatient psychiatric evaluation, the district court enlarged the time for filing the appeal, and thus, the notice of appeal was timely filed. (DE 270).

Subsequently, Negrón's appellate counsel submitted a motion in the district court requesting a stay of the commitment order for psychiatric evaluation pending appeal. (DE 284). But in an Opinion and Order, the district court denied Negrón's request. (DE 285). Negrón followed with a motion in this Court requesting a stay of the district court's order for inpatient psychiatric evaluation pending appeal, or alternatively, an order for expedited briefing. (AM 1).

## ARGUMENT

Under federal law, an individual's mental competency may be questioned "at any time after the commencement of probation or supervised release and prior to his completion of the sentence." 18 U.S.C. § 4241(a). When a criminal defendant's competency is called into question, 18 U.S.C.

§ 4241(d) requires the district court to make a preliminary finding as to whether "a preponderance of the evidence" demonstrates that the defendant is, in fact, incompetent, i.e., whether he "suffer[s] from a mental disease or defect" which renders him "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d); *see* 18 U.S.C. § 4241(a). "To make this determination, the district court must conduct a hearing at which the defendant, represented by counsel, is afforded an opportunity to testify and to call and confront witnesses." *United States v. Magassouba*, 544 F.3d 387, 393 (2d Cir. 2008) (citing 18 U.S.C. §§ 4241(a), (c) & 4247(d)).

Prior to this hearing, the district court "may order" a "psychiatric or psychological examination" of the defendant. 18 U.S.C § 4241(b). "To effect such examination, the court 'may' order the defendant committed 'to the custody of the Attorney General for placement in a suitable facility.'" *Magassouba*, 544 F.3d at 393 (quoting 18 U.S.C. § 4247(b)). And "[u]nless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court." 18 U.S.C. § 4247(b). This step-one commitment may not "exceed thirty days," although the

statute permits the director of the designated commitment facility to apply for a "reasonable extension . . . not to exceed fifteen days." *Id*.

"If the district court makes a preliminary finding of incompetence, the second step of the statutory scheme . . . mandates the defendant's custodial hospitalization for evaluation and possible treatment." *Magassouba*, 544 F.3d at 393. The court may commit the defendant for a "reasonable period of time, not to exceed four months . . . to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." 18 U.S.C. § 4241(d).

Finally, at the third step in the process, which comes at the end of the second confinement, another hearing is held to determine if the defendant is no longer incompetent and not a danger to another person or to the property of another. 18 U.S.C. §§ 4241(d), 4246.

## A.    This Court lacks jurisdiction to hear this competency evaluation appeal.

The government contests Negrón's assertion that this Court has appellate jurisdiction. (AB 2). Negrón does not contend that the commitment/evaluation order is a "final decision" resolving this case within the meaning of 28 U.S.C. § 1291, which confers on "jurisdiction of

appeals from all final decisions of the district courts." Nor does he allege that the statutory provisions explicitly allowing for interlocutory appeals applies here. *See*, *e.g.*, 18 U.S.C. § 3731. However, Negrón asserts that the order incarcerating him for a § 4241 and 4247(b) psychiatric evaluation is reviewable under the collateral-order doctrine. (AB 2-3).

The Supreme Court has held that, except in extraordinary criminal cases that meet the demanding standards of the collateral order doctrine, § 1291's "final decision" requirement "prohibits appellate review until conviction and imposition of sentence." *Flanagan v. United States*, 465 U.S. 259, 263 (1984). The Court has "interpreted the requirements of the collateral order exception to the final judgment rule with the utmost strictness in criminal cases." *Flanagan*, 465 U.S. at 265-66. But, under the collateral-order doctrine, a litigant may seek immediate review of orders that are "distinct from the merits, definitive as to the issue to be reviewed, affect interests that could not be vindicated by appeal after a final judgment, and present a significant legal issue (as opposed, for example, to the mere challenge to the exercise of discretion)." *United States v. Filippi*, 211 F.3d 649, 650 (1st Cir. 2000); *see United States v. Kouri-Perez*, 187 F.3d 1, 5 (1st Cir.1999).

Here, Negrón contests the step-one commitment/evaluation order under 18 U.S.C. §§ 4241(b) and 4247(b). (AM 5). In *Filippi*, this Court addressed and held appealable a step-two § 4241(d) commitment order under the collateral-order doctrine. *Filippi*, 211 F.3d at 650-51. But this Court has not squarely addressed this commitment for evaluation issue. And the circuits are split as to whether this step-one commitment order is appealable. *United States v. Deters*, 143 F.3d 577, 579-82 (10th Cir. 1998) ("step-one" commitment order under § 4241(b) appealable); *United States v. Davis*, 93 F.3d 1286, 1288-89 (6th Cir. 1996) (same); *United States v. Weissberger*, 951 F.2d 392, 395-97 (D.C. Cir. 1991) (same). *But see United States v. Barth*, 28 F.3d 253, 255-56 (2d Cir. 1994) ("step-one" commitment order not appealable).

Here, this Court should follow the minority view in *Barth*. As the Second Circuit determined, a step-one commitment for examination order is merely a preliminary step in the process and results in prompt return to the district court for an ultimate determination after the defendant is finally sent for an evaluation. *Barth*, 28 F.3d at 255-56. "Moreover, denying appealability does not leave the defendant without remedies in extraordinary situations" because the lawfulness of the confinement can be "tested by a writ of habeas corpus," or an "order entered wholly in excess of a district court's

jurisdiction could be challenged by petition for a writ of mandamus." *Id.* Negron's appeal would therefore be dismissed.

Even so, if one prong of the collateral order doctrine is not satisfied, "jurisdiction is defeated." *United States v. Pierce*, 467 F.3d 362, 369 (3d Cir. 2006) (citing *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276 (1988)). In *Filippi*, this Court indicated that a defendant's commitment on other grounds (i.e., "being detained as a flight risk or danger to the community" or "his mental condition makes him dangerous to himself or to others") could affect the application of the collateral-order doctrine. *See Filippi*, 211 F.3d at 251; *see also Magassouba*, 544 F.3d at 400-01.

Here, Negrón cannot meet the second requirement of the collateral-order doctrine. He asserts that the district court erred because the order improperly involved an indefinite commitment, inpatient evaluation at another facility (i.e., FMC Butner), and a treatment request. (AM 5). But he cannot show a commitment error. Negrón is detained pursuant to 18 U.S.C. § 3142. (AA43).

And while detained, Negrón cannot dispute that the BOP can send him to Butner and have him evaluated and treated, even with medication, without a hearing. He has severe mental health issues that are dangerous to

the community and himself requiring inpatient and psychological treatment. (DE 251-1 at 24-25). The Supreme Court has outlined different tests for when the government may involuntarily medicate an individual, depending on whether the medication is for purposes of prison control or prisoner health on the one hand, *see Washington v. Harper*, 494 U.S. 494 U.S. 210, 227 (1990) (holding that involuntarily medicating an inmate with a serious mental illness is constitutionally appropriate without a hearing where the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest), or, on the other hand, for the purpose of prosecuting an incompetent defendant, *see Sell v. United States*, 539 U.S. 166, (2003). Finally, Negrón has not shown that medications have been or will be given.

So Negrón cannot show compliance with the second factor of the collateral-order doctrine, and, thus, this appeal should be dismissed. *See Magassouba*, 544 F.3d at 401 (declining to address whether collateral order doctrine applied to order of custodial hospitalization applied to defendant generally detained under § 3142); *Pierce*, 467 F.3d at 370-72 (noting that collateral-order doctrine applies to commitment orders where the defendant is not in custody: "the parties have not called to our attention any decisions

applying the collateral order doctrine to commitment orders that do not involve an actual loss of liberty.").

**B.** **Even if the Court has jurisdiction, the district court properly denied Negrón's stay, and an expedited briefing schedule is not required.**[5]

"A party requesting injunctive relief pending appeal bears the burden of showing that the circumstances of the case justify the exercise of the court's discretion." *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010). In determining whether to stay an order, this Court looks to: "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent relief; (3) whether issuance of relief will substantially injure the other parties

---

5. Negrón filed a number of *pro se* motions in the Spanish language in the district court. But, the court's acceptance of such motions violated the English language requirement of the Jones Act, 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."). *See United States v. Rivera-Rosario*, 300 F.3d 1, 8-9 (1st Cir. 2002). Now, Negrón has filed a motion on appeal with the English translations for some of these motions. But these translated documents should be rejected by the Court. In *Rivera-Rosario*, this Court encountered a similar situation and rejected the suggestion that such violations of the Jones Act can be remedied "by simply supplementing the record on appeal to include a certified English translation . . ." *Id*. at 9. Although recognizing that such a remedy was "tantalizingly efficient," the Court found that it was "beset with procedural and substantive difficulties that ultimately make it unappealing." *Id*.

interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors are the most critical." *McKee*, 622 F.3d at 15. "Both require a showing of more than mere possibility." *Id*.

In denying Negrón's stay request, the district court properly determined that his appeal will not likely prevail. (DE 284). Negrón contends that the district court's order does not expressly state the § 4247(b) 30-day limitation language, and thus, he asserts that he will be indefinitely committed. (AM 4). And although the district court's order did not specify this 30-day limitation, it contained an implicit reasonableness requirement as to the timing for commitment for the evaluation when it cited and relied upon § 4247(b) and its 30-day requirement from that section. (DE 261; DE 284 at 7-8). Even so and addressed above in Section B, any error would be harmless because he was also detained pending the final revocation hearing under § 3142, (AA 43) and the BOP could evaluate and potentially on its own medicate Negrón. Thus, Negrón's indefinite term of confinement argument would fail.

Negrón also avers that that the district court erred by requiring "the commitment be at a facility in North Carolina without finding that a suitable

facility in Puerto Rico, or closer to Puerto Rico, was not practical." (AM 5). As addressed above, § 4247 provides that "[u]nless practicable, the psychiatric or psychological examination shall be conducted in the suitable facility closet to the court." 18 U.S.C. § 4247(b).

As the district court determined, "[a]n examination within the jurisdiction was not feasible." (DE 284 at 8). Negrón was unable to do an out-patient evaluation due to his behavior. He had failed to comply with prior out-patient evaluation and treatment and continually violated his supervised release conditions. (AA80). And the psychologist recommended explicitly that he receive in-patient mental health treatment. (DE 251-1; DE 282 at 8-9).

Moreover, Negrón was detained pending the final revocation hearing, which left the option of only in-patient evaluation. (AA43). Here, Negrón was detained at Metropolitan Detention Center (MDC) Guaynabo. (AA102). MDC Guaynabo is the only federal prison in Puerto Rico and has limited medical facilities. *See* Zoukis Consulting Group, Puerto Rico Federal Prisons|Federal Prisons in Puerto Rico, at https://www.prisonerresource.com/federal-prisons/puerto-rico/ (last visited June 24, 2021). But the BOP operates five Federal Medical Centers

(FMCs) in Butner, North Carolina; Carswell at Fort Worth, Texas; Devens at Ayer, Massachusetts; Lexington, Kentucky; and Rochester, New York. *See* Federal Bureau of Prisons, List of Federal Medical Centers, available at https://www.bop.gov/locations/list.jsp (last visited June 24, 2021). In this case, FMC Butner is the closest, and most practical venue for the in-patient examination. (DE 284 at 10). Negrón proffered no reason for the district court to question Negrón's in-patient evaluation at FMC Butner. (AA66-90). "Consequently, Negrón's argument regarding location of the examination is unavailing." (DE 284 at 10).

Finally, Negrón argues that under §§ 4241 and 4247(b), the district court exceeded its authority by ordering treatment, "bypassing the required evidentiary hearing and specific finding of incompetency under § 4241(d)." (AM 5). He also asserts the "*treatment* order violated [his] due a process and his constitutional liberty interest in avoiding the forced administration of drugs under *Sell*." (AM 6) (emphasis in original).

Although the district court's order referenced "treatment" and "to be treated," it expressly stated that it was limited to "the provisions of Sections 4241(a) and (b), 4242(a) and 4247" (DE 261), which involve the evaluation and reporting process and not the treatment and hospitalization aspects. *See*

18 U.S.C. §§ 4241(a) and (b), 4242(a) and 4247. And the court's focus in the order was to "determine defendant's mental competency to comply with the supervised release term conditions, and aid in his defense and to treat defendant as deemed necessary, . . ." which is related to an evaluation process. (DE 261 at 11). The court also determined that its order "conditioned the administration of 'treatment' on the [statute] and the medical determinations rendered by qualified psychiatrist," and after the evaluation, Negrón" would "be represented by counsel," "afforded an opportunity to testify," allowed to subpoena witnesses on his behalf, and to confront and cross-examine witnesses," at a competency hearing. (*Id*.). At that time, Negrón could object or challenge "any diagnosis or recommended treatment plan," protecting his due process rights. (*Id*.)

Moreover, the district court properly determined that Negrón conflated these terms with the administration of prescription drugs. (DE 284 at 10). In *Sell*, the Supreme Court explained that the involuntary medicating a defendant solely to render him competent to stand trial for a serious, but nonviolent, crime is permissible in rare circumstances, "but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and taking account of

32

less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 539 U.S. at 179. Here, the court's order did not require that Negrón submit himself to *treatment* or intake of medication but was limited to the fact that he "submit himself to such evaluation." (DE 261 at 1). And Negrón did not allege that he was being administrated drugs. Nor did he show that there was a plan to administer him drugs, as the "[t]reatment may include counseling and other therapeutic options." (DE 282 at 10).

Furthermore, the fair reading of the order reflected the need for an evaluation to determine Negrón's competency and the treatment if deemed necessary. (DE 261). The order required Butner "to determine defendant's mental competency to comply with the supervised release conditions, that is, whether he is able to understand the proceedings against him, to consult with his counsel and aid in his defense and in order to treat defendant as deemed necessary by the psychiatrists . . ." (*Id*.). It did not impose a treatment condition at the time of evaluation. Instead, the court simply stated the evaluation would determine if he was able to understand the proceedings, consult with counsel, and assist in his defense and what treatment would be deemed necessary. Finally, as part of his supervised

release conditions, a mental health treatment program could be and was imposed as arranged by the probation officer under Special Condition No. 7. (AA4).

Even if Negrón was required to undergo treatment including the administration of medicine, his rights were protected. The order required that the medical exam reports be provided to Negron's counsel. (DE 261). Thus, his counsel would be advised and could contest the treatment.[6]

Finally, the district court did not abuse its discretion in ordering a psychiatric examination. (DE 284 at 12). Negrón does not contest the district court's issuance of an order for psychiatric examination. Nor could he, as his conduct speaks to the contrary. Negrón "littered the docket with nonsensical motions for over a year" and "a psychologist recommended an in-patient psychiatric examination." (DE 284 at 12). Besides, he behaved erratically and was hostile which was reflected by his on and off attitude toward

---

6.    Contrary to Negrón's contention (AM 6-7), the district court could impose a mental health evaluation, with the potential for treatment, as condition of his supervised release term upon revocation. Section 3583(e) of Title 18 allows a district court to modify the defendant's supervised release conditions, including the imposition of a mental health evaluation with possible treatment. *See* 18 U.S.C. § 3583(e)(2); *United States v. Wilson*, 707 F.3d 412, 416 (3d Cir. 2013).

compliance or non-compliance with his supervised release conditions. (AA8-12, 26-32).

Based on the foregoing, Negrón's request for stay of the district court's order for commitment for a psychiatric evaluation pending appeal should be denied. And because Negrón's contentions will not likely succeed on the merits, his request for an expedited briefing schedule should also be denied.

## CONCLUSION

For the above stated reasons, Negrón's request for stay of the district court's order pending appeal, or alternatively, expedited briefing should be denied.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 25th day of June 2021.

W. Stephen Muldrow
United States Attorney


/s/Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division


/s/ Thomas F. Klumper
Assistant United States Attorney
Senior Appellate Counsel
U.S. Attorney's Office
Torre Chardón, Room 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656/Fax (787) 771-4050

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND LENGTH LIMITATIONS**

_____

**APPEAL NO. 21-1077**

**UNITED STATES**
**APPELLEE**

**V.**

**ALEXIS D. NEGRON-CRUZ**
**DEFENDANT - APPELLANT**

1.      This motion has been prepared using:


 X_  14 point, proportionally spaced, serif typeface. Software name and version, typeface name, and point size: <u>MS Word 2016, Book Antiqua, 14 point.</u>


2.      This document complies with the word limit of Fed. R. App. P. 27(a)(2)(B) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f) and Fed. R. App. P. 27(a)(2)(B):


 X_   this document contains  <u>6,793</u> words, or


____  this brief uses a monospaced typeface and contains [state the number of] lines of text.


        I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions.  If the Court so directs, I will provide a copy of the word or line print-out.

<u>/s/</u> Thomas F. Klumper

Date: <u>June 25, 2021</u>                    Signature of Filing Party

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on June 25, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to counsels of record for the appellant.

/s/ Thomas F. Klumper
Assistant United States Attorney
Senior Appellate Counsel